UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| REGAL WEST CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>GRAPECITY INC.,<br><br>    Defendant. | CASE NO. C11-5415 BHS<br><br>ORDER DENYING MOTIONS TO EXCLUDE WITHOUT PREJUDICE |
| GRAPECITY INC.,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>SOFTKETEERS, INC.,<br><br>    Third-Party Defendant. | |

This matter comes before the Court on Plaintiff Regal West Corporation's ("Regal") motion to exclude (Dkts. 64 & 67). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motions without prejudice for the reasons stated herein.

## I. PROCEDURAL HISTORY

On June 1, 2011, Plaintiff Regal filed a complaint against GrapeCity for breach of contract. Dkt. 1. On June 23, 2011, Regal filed a first amended complaint. Dkt. 7 ("FAC"). Regal alleges that it contracted with GrapeCity "to develop and implement the technical architecture of an Automated Transportation Management System (ATM) . . . ." FAC, ¶ 3.3.

On December 20, 2007, Regal filed a motion to exclude the expert testimony of Shy Cohen (Dkt. 64), and, on December 27, 2012, filed a motion to exclude the testimony of William Iverson (Dkt. 67). On January 7, 2013, GrapeCity responded. Dkts. 69 & 71. On January 11, 2013, Regal replied. Dkts. 73 & 75.

## II. FACTUAL BACKGROUND

Regal is a warehousing and logistics provider. Dkt. 59, Declaration of Randy Neeves ("Neeves Decl."), ¶ 2. Regal utilizes a Warehouse Management System ("WMS") to keep track of where in the various warehouses different products are shelved, to aggregate products from different manufacturers into shipments to retailers, and to create bills of lading for the shipments. *Id.* ¶ 4. For several years after the WMS went into operation, Regal employees would manually check the rates offered by different freight carriers to determine the most favorable rate for a particular shipment. The Regal employees would use the bills of lading generated by the WMS as the basis for the information needed to do the manual assessment of rates. *Id.* ¶ 9.

In 2008, Regal contracted GrapeCity to develop an Automated Transportation Management ("ATM") system. *Id.* ¶ 10–11. Mr. Neeves alleges that

>Although GrapeCity worked on the ATM project for more than 18 months and was paid in excess of $1.6 million, it never delivered an ATM system that could accurately determine rates applicable to shipments from Regal's warehouses.

*Id*. ¶ 11.  On September 10, 2012, Regal's attorney, John Guadnola, sent GrapeCity's attorney, James Fowler, a letter detailing the alleged deficiencies in the ATM system and requesting reimbursement.  Dkt. 72, Declaration of William H. Walsh, Exh. 2.  Mr. Guadnola stated that some of the alleged deficiencies were (a) GrapeCity's choice of Windows Communication Foundation ("WCF") technology was wrong, (b) the ATM system mishandled errors and error logging, (c) the ATM system could not handle the volume of transactions Regal wanted, and (d) the ATM system's implementation was below industry standards.  *Id*. at 2–3.  Mr. Guadnola concluded with allegations that "the problems identified by Regal are numerous and serious. The system as prepared by GrapeCity is essentially useless." *Id*. at 4.  Regal then retained Softketeers, Inc. to build the ATM system.

In its motion, Regal simplifies the allegations by stating that "GrapeCity breached the contract to develop an ATM system by delivering a program that did not work properly – it never generated accurate rate quotes."  Dkt. 64 at 9.  GrapeCity counters that:

> Nowhere in [Mr. Guadnola's] five-page, single-spaced letter of complaints with GrapeCity's ATM system did Regal mention that every rate quote GrapeCity's software generated was incorrect. Regal did not do so because this theory only became the focus of the litigation after the evidence disproved Regal's other theories.

Dkt. 71 at 4 n.3.  It is apparent that the parties disagree as to the substance of the dispute.

ORDER - 3

## III. DISCUSSION

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Expert testimony is admissible if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The Supreme Court held that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). To perform this "gatekeeping role," the district court engages in a two-step inquiry: First, the court must determine whether the proffered evidence is reliable, i.e., whether the expert's testimony reflects scientific knowledge, the findings are derived by the scientific method, and the work product amounts to "good science." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II") (quoting *Daubert*, 509 U.S. at 590, 594). Second, the court must determine whether the testimony is relevant, i.e., "that it logically advances a material aspect of the proposing party's case." *Id*. The district court's gatekeeping obligation extends to all expert testimony, not only testimony based on scientific knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The proponent of expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n. 10 (citing *Bowjaily v. United States*, 438 U.S. 171, 175–76 (1987)).

In this case, Regal moves to exclude Mr. Cohen and Mr. Iverson because their testimony is not relevant. GrapeCity counters that Regal's liability theory has been a moving target. Dkt. 71 at 4. To a certain extent, the Court agrees. It appears that both

Mr. Cohen's and Mr. Iverson's opinions could become relevant based on the evidence offered at trial. For example, if evidence is offered that GrapeCity's choice of using WCF as the communications technology was particularly inappropriate for use in the ATM system, then GrapeCity may call Mr. Shy to testify that WCF was appropriate and suitable for this aspect of the ATM system. In other words, GrapeCity has shown that the relevance of Mr. Cohen's and Mr. Iverson's testimony is based on the foundation laid by the time either witness is called to testify. Moreover, it is apparent that Mr. Cohen and Mr. Iverson have addressed at least some deficiencies set forth in Mr. Guadnola's letter to Mr. Fowler regarding reimbursement. If evidence of those allegations is offered and admitted at trial, then Mr. Cohen and Mr. Iverson's testimony is clearly relevant.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Regal's motions to exclude (Dkts. 64 & 67) are **DENIED without prejudice.**

Dated this 31st day of January, 2013.

BENJAMIN H. SETTLE
United States District Judge